**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

_____

**BAP NOS. MW 19-057, MW 19-058, and MW 19-059**

_____

**Bankruptcy Case No. 19-40773-CJP**

_____

**BRADLEY R. NELSON,**
**Debtor.**

_____

**BRADLEY R. NELSON,**
**Appellant,**

**v.**

**WELLS FARGO BANK, N.A.,**
**Appellee.**

_____

**Before**
**Godoy, Lamoutte, and Finkle,**
**United States Bankruptcy Appellate Panel Judges.**

_____

**Bradley R. Nelson, pro se, on brief for Appellant.**
**William J. Hanlon, Esq., Dallin R. Wilson, Esq., and Nascine C. Howell, Esq.,**
**on brief for Appellee.**

_____

**November 6, 2020**

_____

**Finkle, U.S. Bankruptcy Appellate Panel Judge.**

Bradley R. Nelson (the "Debtor") appeals pro se from three bankruptcy court orders: (1) the order overruling his objection to the proof of claim filed by Wells Fargo Bank, N.A. ("Wells Fargo") based on its first mortgage on the Debtor's property (BAP No. MW 19-058); (2) the order overruling his objection to Wells Fargo's proof of claim based on its second mortgage on the Debtor's property (BAP No. MW 19-057); and (3) the order granting Wells Fargo's motion for relief from the automatic stay (BAP No. MW 19-059).[1]  The crux of his challenge to the appealed orders is essentially two-fold: (1) Wells Fargo never owned the notes secured by the mortgages and therefore lacked standing to foreclose; and (2) the bankruptcy court abused its discretion by declining to conduct an evidentiary hearing.  For the reasons set forth below, we **AFFIRM** all three orders (collectively, the "Orders").

## BACKGROUND

### I.      Pre-Petition Events

On March 2, 2007, the Debtor entered into a loan agreement with World Savings Bank, FSB ("World Savings") in the principal amount of $511,500.00, signing an Adjustable Rate Mortgage Note (the "Note").  Under the terms of the Note, the Debtor promised to repay that sum to World Savings, "its successors and/or assignees, or anyone to whom th[e] the Note [wa]s transferred."  The Note is secured by a first mortgage (the "First Mortgage") on the Debtor's property in Groton, Massachusetts (the "Property").  On the same date, the Debtor also entered

---

[1]  The Debtor filed a separate notice of appeal for each of the Orders.  Although the appeals were not companioned for briefing purposes, they were companioned for argument and now they are companioned for disposition.

into an equity line of credit agreement (the "Line of Credit Agreement") with World Savings for $102,300.00, secured by a second mortgage on the Property (the "Second Mortgage").

Effective December 31, 2007, World Savings changed its name to Wachovia Mortgage, FSB ("Wachovia"). On November 1, 2009, Wachovia converted into a national bank with the name Wells Fargo Bank Southwest, N.A., which merged into Wells Fargo Bank, N.A. on the same date.

In October 2010, the Debtor entered into a Home Affordable Modification Agreement (the "Modification Agreement") with "Wachovia Mortgage, a division of Wells Fargo Bank, N.A.," in connection with the Note and First Mortgage. Under the terms of the Modification Agreement, the Debtor agreed that the new principal balance due on the Note was $435,513.84.

## II.     Prior Bankruptcy Filing

The Debtor previously filed a petition for relief under chapter 7 of the Bankruptcy Code (the "Prior Bankruptcy Case") and received his discharge on October 23, 2012. On his Schedule D filed in that case, the Debtor listed "Wells Fargo Home Mortgage" as the holder of an approximate $414,000.00 claim, secured by the First Mortgage. He also listed "Wells Fargo Home Mortgage" as the holder of an approximate $80,000.00 claim, secured by a second mortgage on the Property. During that case, Wells Fargo filed a motion for relief from the automatic stay, alleging the Debtor was in default under the Note and seeking authorization to exercise its rights under the Note and First Mortgage. The court granted the motion in January 2014, and Wells Fargo commenced foreclosure proceedings.

### III.    The District Court Litigation

#### A.    The Complaint

On September 4, 2014, the Debtor filed a five-count complaint (the "2014 Complaint") in state court against "Wells Fargo Bank, N.A., as servicer," and World Savings seeking to enjoin the foreclosure. In Count I, the Debtor asserted a cause of action against both Wells Fargo and World Savings for "violation of [the] duty to foreclose in good faith." In Count II, he set forth a claim for breach of contract against Wells Fargo based on its alleged failure to offer him a permanent loan modification. In Count III, he pled a cause of action for promissory estoppel against Wells Fargo, alleging that he relied to his detriment on Wells Fargo's promises of a loan modification. In Count IV, the Debtor requested a declaratory judgment that World Savings was not entitled to foreclose because it was not the holder of the Note. Lastly, in Count V the Debtor stated a claim against Wells Fargo under Mass. Gen. Laws ch. 93A, based on its alleged failure, among other things, to stop the foreclosure.

More particularly, as part of Count I, the Debtor alleged that Wells Fargo and World Savings had "no legal right" to foreclose. In support, he maintained that World Savings did not hold the Note and neither Wells Fargo nor World Savings were able "to produce" the Note "with all the necessary endorsements." He also asserted that Wells Fargo was merely World Savings' "agent for matters related to foreclosure." These allegations would eventually resurface in the subsequent bankruptcy proceedings, as discussed below.

#### B.    The Motion to Dismiss

Wells Fargo removed the case to the United States District Court for the District of Massachusetts (the "District Court") and filed a motion to dismiss each of the Debtor's claims

(the "Motion to Dismiss").  Insisting the Debtor had not pled a plausible claim for relief on his

theory that it was not the holder of the Note, Wells Fargo argued:

> The only allegations in the Complaint that support this claim are that Plaintiff
> requested from Wells Fargo a copy of the Note showing all endorsements and
> transfers and Wells Fargo allegedly has been unable to produce it to show that
> Wells Fargo is in fact entitled to enforce the Note.  The Complaint, however,
> admits that Plaintiff borrowed money from World Savings and that the loan was
> secured by the Mortgage. . . .  Because it is judicially noticeable that Wells Fargo
> is the successor-by-merger to World Savings and there are no credible allegations
> that the Note and/or Mortgage has been assigned to any third-party, Plaintiff has
> failed to state a plausible claim for relief that Wells Fargo is not entitled to
> enforce the Note and foreclose the Mortgage.
>
> Effective December 31, 2007, World Savings changed its name to Wachovia
> Mortgage, FSB ("Wachovia").  A copy of a letter from the Office of Thrift
> Supervision establishing the name change is attached hereto . . . .  Next, effective
> November 1, 2009, Wachovia changed its name to Wells Fargo Bank Southwest
> N.A. and then merged into Wells Fargo.  A copy of a letter from the Comptroller
> of Currency establishing the name change and merger is attached . . . .
>
> Federal banking law transferred all of World Savings' rights in the Note to
> Wachovia and then to Wells Fargo by operation of law, without the need for any
> endorsements or assignments.

During the December 15, 2016 hearing on the Motion to Dismiss, the Debtor, who was

represented by counsel at the time, advised that he was pressing only Counts III and V of the

2014 Complaint (the promissory estoppel and Mass. Gen. Laws ch. 93A claims, respectively).

Accordingly, on December 29, 2016, the District Court dismissed Counts I (violation of duty to

foreclose in good faith), II (breach of contract), and IV (declaratory judgment), and allowed the

Debtor's promissory estoppel and Mass. Gen. Laws ch. 93A counts to proceed.

5

### C. The Motion for Summary Judgment

In April 2017, Wells Fargo filed a motion for summary judgment (the "Summary Judgment Motion") as to the remaining counts of the 2014 Complaint, namely Counts III and V. In its accompanying Statement of Material Facts, Wells Fargo stated:

> Effective December 31, 2007, World Savings merged with Wachovia Mortgage, FSB . . . .
>
> [ ] Effective November 1, 2009, Wachovia changed its name to Wells Fargo Bank Southwest, N.A. and merged into Wells Fargo.[2]

Wells Fargo also submitted the affidavit of Brandon McNeal, its vice president of loan documentation, who swore to the above facts. Although the Debtor filed an opposition to the Summary Judgment Motion along with a supporting memorandum of law and exhibits, he failed to dispute Wells Fargo's Statement of Material Facts or to submit his own statement of material facts supported by admissible evidence from the factual record.

Following a hearing, the District Court granted the Summary Judgment Motion, concurring with Wells Fargo's position that it was the holder of the Note by merger.[3] Judgment entered in favor of Wells Fargo on May 30, 2017. The Debtor did not appeal the judgment.

---

[2] See Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand."). Thus, we may consider the earlier proceedings before the District Court that are relevant to these appeals.

[3] The District Court found the following facts to be admitted: in March 2007, the Debtor entered into a loan and line of credit with World Savings; in December 2007, World Savings merged with Wachovia; and in November 2009, Wachovia changed its name and merged into Wells Fargo.

**IV.     The Current Bankruptcy Case and the Proofs of Claim**

On May 10, 2019, the Debtor filed a chapter13 petition (the "Present Bankruptcy Case").

On his Schedule A/B, the Debtor disclosed his ownership interest in the Property.

Wells Fargo filed proof of claim no. 5-1 ("POC 5-1"), stating it held a claim in the

amount of $572,993.27, secured by the Property.  Among the exhibits attached to POC 5-1 were

copies of: (1) the First Mortgage; (2) the Note; (3) the Modification Agreement; (4) a letter dated

November 19, 2007 from the Office of Thrift Supervision evidencing World Savings' change of

name to Wachovia (the "OTS Letter"); and (5) a letter from the Comptroller of the Currency

officially certifying that Wachovia converted to a national bank named Wells Fargo Southwest,

National Association, which then merged into Wells Fargo Bank, National Association, effective

November 1, 2009 (the "Comptroller Letter").

Wells Fargo also filed proof of claim no. 7-1 ("POC 7-1"), asserting an additional

secured claim in the approximate amount of $79,700.00, secured by the Property.  Wells Fargo

attached to POC 7-1 copies of: (1) the Line of Credit Agreement; (2) the Second Mortgage;

(3) a modification agreement relating to the Second Mortgage entered into with Wachovia;

(4) the OTS Letter; and (5) the Comptroller Letter.

**V.     The Proofs of Claim Litigation**

The Debtor filed objections to both of Wells Fargo's proofs of claim (collectively, the

"Objections to POC 5-1 and POC 7-1").  Although his objections invoked several statutes

(including the Fair Debt Collection Practices Act, the Clayton Act, the Sherman Act, and 11

U.S.C. § 524), they essentially were two-fold: (1) Wells Fargo was not entitled to enforce the

Note as it was not the holder; and (2) "all debt" due to Wells Fargo had been discharged in his

Prior Bankruptcy Case.  The Debtor insisted that Wachovia had never merged into Wells Fargo;

7

rather it was purchased by Wells Fargo. As the corollary to this theory, the Debtor maintained that World Savings sold the Note to a third party before Wells Fargo purchased Wachovia. He further maintained that Wells Fargo was unable to present the original Note or the proper endorsements reflecting the transfer of the Note to Wells Fargo.

In its various responses to both objections, Wells Fargo countered that the Debtor had failed to proffer substantial evidence to successfully challenge the prima facie validity of the proofs of claim. Invoking res judicata, Wells Fargo highlighted that the Debtor had previously litigated the issue of its holder status before the District Court, which had already ruled in its favor and specifically found:

> On March 2, 2007, Nelson entered into a loan and a line of credit with World Savings Bank, FSB ("World Savings"), which were secured by a mortgage on Nelson's property. . . . On December 31, 2007, World Savings merged with Wachovia Mortgage, FSB ("Wachovia"), which in turn on November 1, 2009, changed its name and merged into [Wells Fargo Bank, N.A.].

In further support of its status as the holder of the Note, Wells Fargo pointed to several of the Debtor's filings in the Prior Bankruptcy Case, including his Schedule D, his Statement of Intention, and his creditor matrix, all listing Wells Fargo Home Mortgage. Wells Fargo also cited the Debtor's objection to its motion for relief from stay filed in that case wherein he "represented that 'Wells Fargo Home Mortgage' was the holder of [a] secured claim" and acknowledged that he was applying for a loan modification with Wells Fargo. Relying on the doctrine of judicial estoppel, Wells Fargo argued that the Debtor was barred from asserting Wells Fargo was "a stranger to the Mortgage." Lastly, Wells Fargo disputed the Debtor's assertion that the subject indebtedness had been discharged in the Prior Bankruptcy Case and by attempting to collect it, Wells Fargo had acted "illegally." Citing Johnson v. Home State Bank, 501 U.S. 78, 84 (1991), Wells Fargo retorted that "a bankruptcy discharge extinguishes only one

mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*."

In support of its POC 5-1, Wells Fargo submitted: (1) the 2014 Complaint; (2) the notice of removal of the 2014 Complaint to the District Court; and (3) the docket report for the District Court case, reflecting: (i) the Debtor was not pressing Counts I, II, and IV; and (ii) the District Court's findings regarding the chain of title relating to the First Mortgage. In defense of POC 7-1, Wells Fargo furnished: (1) the 2014 Complaint; (2) the Motion to Dismiss, supporting memorandum of law, and reply brief in further support of the motion; (3) the Debtor's objection to the Motion to Dismiss; and (4) a copy of the District Court's docket report.

## VI.    Relief from Stay Proceedings in the Present Bankruptcy Case

### A.    The Stay Relief Motion

On October 2, 2019, Wells Fargo filed a motion for relief from stay (the "Stay Relief Motion") under § 362(d)(1) and (d)(2)[4] in the Present Bankruptcy Case in order to foreclose the First Mortgage and commence a summary process action against occupants of the Property. Representing it was the current holder of the Note, Wells Fargo further alleged: (1) the Debtor's chapter 13 plan had not yet been confirmed; (2) the Note was in post-petition default in the total amount of $12,280.48 plus reasonable attorney's fees and costs; (3) as of September 13, 2019, the total outstanding balance owed on the Note was approximately $581,000.00; and (4) the estimated amount of the encumbrances on the Property totaled about $712,000.00, while the

---

[4] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101-1532. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

Property's fair market value approximated $580,000.00 and its liquidation value was about $545,000.00. In addition, Wells Fargo noted that the Debtor claimed an exemption in the Property in the amount of $500,00.00 under Mass. Gen. Laws ch. 188, §§ 1-4 and had recorded a declaration of homestead in 2007. Wells Fargo attached supporting exhibits to the motion.[5]

**B.** **Debtor's Objection to Stay Relief Motion**

On October 11, 2019, the Debtor filed an Objection to the Stay Relief Motion on the grounds similarly asserted in his objections to the proofs of claim. After the bankruptcy court scheduled the motion for hearing, the Debtor filed a request for an evidentiary hearing to consider his Objections to POC 5-1 and POC 7-1.[6] The court denied his request, in part, stating: "[T]he parties shall address at the November 19, 2019 non-evidentiary hearings the scope and timing of discovery that may be required with respect to the pending contested matters and thereafter the court may schedule evidentiary hearings, if appropriate."

**VII.    The November 19, 2019 Hearing**

At the November 19, 2019 hearing on the Debtor's Objections to POC 5-1 and POC 7-1, and the Stay Relief Motion,[7] the Debtor appeared pro se. Wells Fargo advanced two grounds for its motion: (1) the Debtor had failed to make any post-petition payments in connection with the

---

[5] Those exhibits included copies of: (1) a Certification Regarding Pre-filing Conference Per MLBR 13-16-1(A); (2) a Motion for Relief from Stay - Real Estate Worksheet; (3) a Declaration in Support of Motion for Relief from the Automatic Stay; (4) the Note; (5) the First Mortgage; and (6) a chart depicting the Debtor's post-petition payment history from June 1, 2019 through September 1, 2019.

[6] Although the Debtor cited "MLBR 9014" in support of his request for an evidentiary hearing, the Local Rules of the United States Bankruptcy Court for the District of Massachusetts contain no such rule.

[7] Additionally, the court considered Wells Fargo's objection to confirmation of the Debtor's second amended chapter 13 plan which did not provide for any payment to Wells Fargo.

First Mortgage; and (2) there was no equity in the Property, as the Debtor listed the Property's value in his Schedules as $580,000.00 and the total amount owed to Wells Fargo was $581,000.00. Emphasizing it was only seeking in rem relief, Wells Fargo claimed it was entitled to such relief under both § 362(d)(1) and (d)(2).

Responding to the court's query about the standing issue, Wells Fargo disputed the Debtor's claim that it lacked standing to foreclose the First Mortgage, reiterating that the Debtor had previously raised that issue unsuccessfully in the 2014 Complaint and the District Court litigation. The court read into the record the finding in the District Court's order granting the Summary Judgment Motion that, based on undisputed facts, World Savings merged with Wachovia, which, in turn changed its name and merged into Wells Fargo. At the court's request, counsel for Wells Fargo displayed the modification agreement relating to the Second Mortgage and focused on "the acknowledgement section":

> MR. McCARTHY [(Counsel for Wells Fargo)]: [W]hat I'm showing for the record is the modification and second deed modification program, modification agreement, which was submitted with the proof of claim. It identifies Bradley R. Nelson as the borrower's name. It identifies Bank Name, Wachovia Mortgage, a Division of Wells Fargo Bank, N.A., as the lender. There are warranties that are reserved to the lender, but if you go through the document and you go to subsection 10, it says, "I certify that the loan documents are composed of valid, binding agreements enforceable in accordance with their terms." And on the final page, Mr. Nelson's signature is there, Wachovia, a Division of Wells Fargo Bank, N.A. signed, and it specifically says Wachovia, a Division of Wells Fargo Bank, N.A.

Nonetheless, the Debtor would not concede that Wells Fargo was a creditor of his and continued to request an evidentiary hearing for the purpose of offering the testimony of a "licensed banker" to refute the claims.

11

Ruling from the bench, the court denied the Debtor's request for an evidentiary hearing, granted the Stay Relief Motion, and overruled the Objections to POC 5-1 and POC 7-1, reasoning:

[T]he issues that you raise don't create an evidentiary issue that requires an evidentiary hearing. The standard that I apply first on the motion for relief from stay is the Grella[ v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994)] standard, which is that . . . the lender in . . . the case of the first mortgage holder [must demonstrate] that it has a colorable claim to . . . the property on which it has a mortgage. They've provided evidence in the record of the trail of the mergers. They've provided copies of modification agreements where you've signed on, seemingly acknowledging Wells Fargo's position as the holder. The 2012 bankruptcy listed Wells Fargo, although a different entity at Wells Fargo, as the holder of the debt and a creditor.

And [the District Court] in . . . an order that's final -- you don't dispute that -- has made certain findings based on a Statement of Material Facts that was not opposed. The findings include that . . . this merger trail exists and gave judgment to Wells Fargo on a number of claims. Regardless of what the effect of the dismissal and the abandonment of the other claims, they have . . . the res judicata argument that these claims could have been brought, should have been brought in that case, but they were abandoned. And they have the effect of the order itself and those findings, which go right to the heart of what you're arguing now.

. . . You're saying there's evidence out there that they didn't receive this as an asset, but they've made their showing of a colorable claim.

[I]n order to dispute the . . . prima facie evidence of a proof of claim you have to demonstrate that there's substantial evidence out there that . . . their standing . . . can be challenged and the proof of claim . . . can be disputed. . . . [T]here are two objections to the proofs of claim. The first is that standing issue that we've been discussing with respect to each, Wells Fargo 1 and Wells Fargo 2, and I think for all the reasons that we discussed in the context of the motion for relief from stay you're precluded from challenging those.

The other issue that you raised is the issue of discharge. The discharge in the 2012 bankruptcy case certainly eliminated your personal liability, but did not eliminate the in rem interest of the lenders with respect to the property.
      . . . .
So . . . with respect to the motion for relief from stay, I'm going to grant that and with respect to the objections to the two claims, I'm going to overrule with the clarification that their claims are solely with respect to the property.

12

## VIII.    The Orders

On November 20, 2019, the court entered two separate orders overruling the Debtor's

Objections to POC 5-1 and POC 7-1 (the "Proofs of Claim Orders"), each providing:

> Objection overruled for the reasons stated on the record and in the responses and supplemental responses filed by Wells Fargo Bank, N.A.; provided, however, that the claim is allowed only as a protective secured claim with respect to the mortgage and not as a general unsecured claim against the estate because the debtor received a discharge of personal liability.[8]  Claimant's recourse is in rem limited solely to the property.

Later, on November 25, 2019, the court entered an order granting the Stay Relief Motion (the

"Order Granting Stay Relief") which provided in pertinent part:

> The Movant, including its successors and assigns, is granted relief from the automatic stay provisions of 11 U.S.C. § 362 to allow it to exercise its rights under its mortgage to conduct a foreclosure sale with respect to the property located at 65 Lovers Lane, Groton, MA 01450, as more particularly described in the Motion, and, if necessary, bring eviction proceedings against the debtor, all in accordance with applicable state and federal law.

This appeal followed.[9]

## POSITIONS OF THE PARTIES[10]

### I.    The Debtor

In his brief the Debtor does not present a separate legal challenge to the Order Granting

Stay Relief, instead relying on the same arguments he presents in support of his objections to the

---

[8]  The bankruptcy court appears not to have used the term "protective secured claim" as it has been traditionally used.  See DPWN Holdings (USA), Inc. v. United Air Lines, Inc., 246 F. Supp. 3d 680, 690-91 (E.D.N.Y. 2017) (stating creditors typically file a "protective" claim when they think they might have a claim but are unsure).

[9]  The Debtor did not seek a stay of the appealed orders.

[10]  Each party submitted the same brief in the three appeals.

proofs of claim. He revisits many of the arguments he made below, and adds that the bankruptcy court deprived him of due process by refusing to conduct an evidentiary hearing. In an effort to defeat Wells Fargo's res judicata argument, the Debtor disputes that the District Court's rulings established ownership of the Notes, contending "the only issue [litigated in the District Court] was a denied modification."

Finally, the Debtor accuses Wells Fargo of a violation of the discharge injunction under § 524, arguing: "The Bankruptcy Code makes it perfectly clear that for a creditor to try to collect on a debt after it is discharged is illegal." In response to Wells Fargo's assertion that it was proceeding exclusively in rem, for the first time the Debtor now challenges the bankruptcy court's jurisdiction to consider the Stay Relief Motion, maintaining that the bankruptcy court "determines who is, and who is not a creditor" and is not authorized to consider an "'*in rem*' action by a non-creditor."[11]

## II.     Wells Fargo

In defense of its status as a secured creditor, Wells Fargo states: "It is hornbook law that a valid lien survives a discharge in bankruptcy unless it is avoidable and the debtor takes the proper steps to avoid it." Additionally, Wells Fargo argues that the bankruptcy court did not err in concluding that the Debtor's objections were barred by res judicata, nor did it abuse its discretion in ruling without an evidentiary hearing. It contends that the bankruptcy court had ample documentary evidence before it and the Debtor failed to identify who would have testified or how that testimony would have altered the bankruptcy court's decision. Lastly, Wells Fargo

---

[11] Although the Debtor raises this issue for the first time on appeal, we are mindful that a litigant generally may raise a court's lack of subject matter jurisdiction at any time. See Kontrick v. Ryan, 540 U.S. 443, 455 (2004).

challenges the sufficiency of the Debtor's argument in his appellate brief on the Order Granting

Stay Relief, asserting the Debtor offers no legal or factual argument as to why the bankruptcy

court abused its discretion in granting Wells Fargo relief from the automatic stay.

## SCOPE OF THE APPEALS

Discrepancies between the issues the Debtor framed in his Statement of Issues and those

identified in his appellate brief present us with the threshold task of defining the scope of these

appeals. We note, for starters, that the Debtor did not brief the only two issues identified in his

Statement of Issues, one invoking § 548, and the other invoking 2019 Massachusetts Senate Bill

547, entitled "An Act to facilitate alternatives to foreclosure." Those issues are, therefore,

waived. See Tower v. Leslie-Brown, 326 F.3d 290, 299 (1st Cir. 2003). The issues which the

Debtor has briefed—primarily the court's refusal to hold an evidentiary hearing and Wells

Fargo's lack of standing to foreclose—are not listed in his Statement of Issues. Such omissions

could arguably result in a waiver of the unlisted issues. See City Sanitation, LLC v. Allied

Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.), 656 F.3d 82, 91 (1st Cir. 2011).

Nevertheless, we will consider these issues because they were addressed by the bankruptcy

court, they do not require independent factual findings, and Wells Fargo fully briefed both issues

and has not asserted they were waived. See Cumbo v. McDow, No. 2:06cv97, 2006 WL

3692665, at *2 (E.D. Va. Dec. 12, 2006) (identifying three factors for inferring issues omitted

from the statement of issues).

This brings us to one remaining issue raised by the Debtor in his brief but not listed on

his Statement of Issues: the allegation that Wells Fargo violated the discharge injunction by

filing proofs of claim in the Present Bankruptcy Case despite his discharge in the Prior

Bankruptcy Case. Applying the above test from Cumbo v. McDow, we deem the discharge

15

injunction issue waived on appeal because: (1) the bankruptcy court did not consider the issue and made no factual findings on this allegation; and (2) Wells Fargo might well be surprised or prejudiced by the Panel's consideration of the issue as it did not include the issue in its appellate brief. See id.[12]

## JURISDICTION

We may hear appeals from "final judgments, orders, and decrees." 28 U.S.C. § 158(a) and (b); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020); Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1692 (2015); Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.), 218 B.R. 643, 645 (B.A.P. 1st Cir. 1998). A bankruptcy court order overruling an objection to a proof of claim is a final order. In re Thomas, 511 B.R. 89, 92 (B.A.P. 6th Cir. 2014), aff'd, 591 F. App'x 443 (6th Cir. 2015); see also Smith v. Pritchett (In re Smith), 398 B.R. 715, 720 (B.A.P. 1st Cir. 2008). An order granting relief from stay is also a final, appealable order. See Pinpoint IT Servs., LLC v. Landrau Rivera (In re Atlas IT Exp. Corp.), 761 F.3d 177, 182 (1st Cir. 2014) ("Orders *granting* stay relief are orders 'disposing of a discrete dispute' and so are final and appealable as of right . . . ."). Accordingly, we have jurisdiction to review the Orders.

## STANDARDS OF REVIEW

We review the allowance or disallowance of a claim under the abuse of discretion standard. See RNPM, LLC v. Mercado Alvarez (In re Mercado Alvarez), 473 B.R. 853, 859

---

[12] The Debtor's omission of this issue from his Statement of Issues was not his only procedural failing related to the asserted discharge injunction violation. In the proceedings below, he failed to raise the issue by motion, instead mentioning it only in his objection to POC 5-1. See Green Point Credit, LLC v. McLean (In re McLean), 794 F.3d 1313, 1326 (11th Cir. 2015) (stating "civil contempt sanctions for the violation of the discharge injunction must be sought by contested matter"). This failure may explain why the bankruptcy court never addressed the issue.

16

(B.A.P. 1st Cir. 2012). Orders granting relief from the automatic stay are also reviewed for abuse of discretion. Mercado v. Combined Invs., LLC (In re Mercado), 523 B.R. 755, 761 (B.A.P. 1st Cir. 2015) (citing Aguiar v. Interbay Funding, LLC (In re Aguiar), 311 B.R. 129, 132 (B.A.P. 1st Cir. 2004)). Similarly, the decision of whether to hold an evidentiary hearing is reviewed for abuse of discretion. See Ross v. Garcia (In re Garcia), 532 B.R. 173, 182 (B.A.P. 1st Cir. 2015). An abuse of discretion occurs when a court "relies upon an improper factor, neglects a factor entitled to substantial weight, or considers the correct mix of factors but makes a clear error of judgment in weighing them." Bacardí Int'l Ltd. v. V. Suárez & Co., 719 F.3d 1, 9 (1st Cir. 2013) (citation omitted). The applicability of the collateral estoppel doctrine, a branch of res judicata as discussed below, presents a question of law requiring de novo review. Blacksmith Invs., Inc. v. Woodford (In re Woodford), 418 B.R. 644, 650 (B.A.P. 1st Cir. 2009) (citations omitted).

## DISCUSSION

The Debtor's arguments below and on appeal share the same goal—to prevent the foreclosure of the Property by challenging Wells Fargo's status as a secured creditor. We first address the Debtor's challenge to the Order Granting Stay Relief and then consider the orders allowing Wells Fargo's claims.

I. **The Relevant Legal Framework Governing the Order Granting Stay Relief**

   A. **Collateral Estoppel**

Inherent in the bankruptcy court's decision articulated from the bench was a recognition that the Debtor's arguments challenging Wells Fargo's standing to foreclose were not new, having been raised in the 2014 Complaint and the ensuing District Court litigation. Thus, to evaluate the Orders, we must consider the doctrine of res judicata, the umbrella term that

17

encompasses both claim preclusion and issue preclusion (traditionally known as collateral estoppel). See Negrón-Fuentes v. UPS Supply Chain Solutions, 532 F.3d 1, 5 n.2 (1st Cir. 2008) (citing AVX Corp. v. Cabot Corp., 424 F.3d 28, 30 (1st Cir. 2005)). Because the District Court issued the orders granting Wells Fargo's Motion to Dismiss and Summary Judgment Motion on the 2014 Complaint, the determination of whether the Debtor's arguments are barred by res judicata is governed by federal law. See Iannochino v. Rodolakis (In re Iannochino), 242 F.3d 36, 41 (1st Cir. 2001). Although the bankruptcy court referenced res judicata from the bench, it did not specify whether it was relying on claim or issue preclusion principles. However, the bankruptcy court did reference the factual findings of the District Court about Wells Fargo's ownership of the Note, and so its decision appears based on an issue preclusion analysis.[13] Therefore, our focus is on collateral estoppel (or issue preclusion) principles. "Under the federal standard of issue preclusion, a party must establish four essential elements: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment." Int'l Strategies Grp., Ltd. v. Pomeroy (In re Pomeroy), 353 B.R. 371, 376 (Bankr. D. Mass. 2006) (citing Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.), 375 F.3d 51, 70 (1st Cir. 2003); Grella, 42 F.3d at 30).

---

[13] For example, during the November 19, 2019 hearing, the court stated: "The [District Court] findings include that . . . this merger trail exists . . . ."

B.      Section 362

        1.      The Automatic Stay, Generally

"Section 362(a)(1) provides that the filing of a bankruptcy petition automatically stays all acts against a debtor and property of the bankruptcy estate, subject to limited exceptions." TD Bank, N.A. v. LaPointe (In re LaPointe), 505 B.R. 589, 593 (B.A.P. 1st Cir. 2014) (citing 11 U.S.C. § 362(a)(1)).  Section 362(d) governs relief from the automatic stay.  Under "§ 362(d)(1), a bankruptcy court shall grant relief from the automatic stay for cause, including lack of adequate protection, and under . . . § 362(d)(2), relief may be granted if the debtor lacks equity and the property is not necessary for an effective reorganization." Aja v. Emigrant Funding Corp. (In re Aja), 442 B.R. 857, 862 (B.A.P. 1st Cir. 2011).[14]  Despite the Debtor's assertion to the contrary, bankruptcy courts have authority to hear, determine, and enter final orders on motions for relief from stay.  Such motions arise in a bankruptcy case and under the Bankruptcy Code and therefore fall within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and, by a standing order of reference, referred to the bankruptcy court by 28 U.S.C. § 157(a).  See 28 U.S.C. § 1334(b); 28 U.S.C. § 157(a); L.R. 201 D. Mass (codifying the order of reference).  They are core proceedings under 28 U.S.C. § 157(b)(2)(G) (stating core proceedings

---

[14]  Section 362(d) provides, in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>     (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>      (2) with respect to a stay of an act against property . . . , if—
>       (A) the debtor does not have an equity in such property; and
>       (B) such property is not necessary to an effective reorganization[.]

11 U.S.C. § 362(d)(1)-(2).

19

include motions for relief from stay); see also In re Morrow, 495 B.R. 378, 382 (Bankr. N.D. Ill. 2013) (explaining that a motion for relief from stay arises in a case under title 11 and is a core proceeding) (citation omitted).

### 2. The Scope of a § 362 Hearing

The First Circuit instructs that "a hearing on a motion for relief from stay is merely a summary proceeding of limited effect, and . . . a court hearing a motion for relief from stay should seek only to determine whether the party seeking relief has *a colorable claim to property of the estate.*" Grella, 42 F.3d at 33 (emphasis added). "A colorable claim is one that is legitimate and that may reasonably be asserted, given the facts presented and the current law[.]" Mission Prod. Holdings, Inc. v. Schleicher & Stebbins Hotels, L.L.C. (In re Old Cold, LLC), 602 B.R. 798, 825 (B.A.P. 1st Cir. 2019) (quoting Jin Qing Li v. Rosen (In re Jin Qing Li), BAP No. NC-17-1062-STaB, 2018 WL 1354548, at *4 (B.A.P. 9th Cir. Mar. 12, 2018)). For this reason, a hearing on a motion for relief from stay

> is analogous to a preliminary injunction hearing, requiring a speedy and necessarily cursory determination of the *reasonable likelihood* that a creditor has a legitimate claim or lien as to a debtor's property. If a court finds that likelihood to exist, this is not a determination of the validity of those claims, but merely a grant of permission from the court allowing that creditor to litigate its substantive claims elsewhere without violating the automatic stay.

In re Grella, 42 F.3d at 33-34 (emphasis added). "[A] hearing on a motion to lift the stay is not the proper time or place for the determination of many substantive rights." United States v. Fleet Bank of Mass. (In re Calore Exp. Co.), 288 F.3d 22, 35 (1st Cir. 2002). This does not mean, however, that such hearing is an inappropriate time to "consider any defenses or counterclaims that bear on whether [a colorable claim] exists." Id. (citation omitted). Some bankruptcy courts

20

in our circuit have observed that "[t]he plain language of section 362 . . . requires that one be a 'party in interest' to seek relief from stay, and therefore, as a threshold issue," the bankruptcy court is required to determine whether the movant has the requisite standing to bring the motion for relief. In re Lopez, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (citations omitted) (footnote omitted); see also In re Maisel, 378 B.R. 19, 21 (Bankr. D. Mass. 2007).

## II.    The Legal Principles Applied to the Order Granting Stay Relief

### A.    Whether Wells Fargo Established a Colorable Claim

The record reflects that Wells Fargo presented documents to the bankruptcy court illustrating a complete and facially valid chain of title establishing that Wells Fargo was the current holder of the First Mortgage. Specifically, during the November 19, 2019 hearing, the bankruptcy court considered the exhibits accompanying each proof of claim. Those exhibits included not only copies of the notes and mortgages, but the modifications thereto, and letters substantiating Wells Fargo's claim that World Savings changed its name to Wachovia, and that Wachovia then merged into Wells Fargo. While the Stay Relief Motion did not duplicate all of those exhibits, it did set forth a chain of title leading to Wells Fargo's ownership with the following assertions: "On March 2, 2007, [the Debtor] executed a note to World Savings Bank, FSB in the original principal amount of $511,500.00 (the 'Note'). The Note was subsequently transferred by merger to Wells Fargo Bank, N.A." Significantly, the bankruptcy court had the benefit of the District Court's findings about the chain of title and read those findings aloud for the record. In short, the record amply supports the bankruptcy court's conclusion that Wells Fargo established a colorable claim to the Property. Wells Fargo, in other words, "show[ed] a reasonable likelihood that it has a meritorious claim." In re Grella, 42 F.3d at 34.

Under these circumstances, the bankruptcy court was not required to conduct a full evidentiary hearing. See id. at 33-34; see also Drislor Assocs. v. Metro N. State Bank (In re Drislor Assocs.), 110 B.R. 937, 940 (D. Colo. 1990) ("The Bankruptcy Code, its legislative history, and the case law addressing the issue all indicate that the bankruptcy court was not required to hold an evidentiary hearing before granting relief from stay."). Consistent with the First Circuit's guidance in Grella and Calore Express, the bankruptcy court permitted the parties to introduce exhibits, while excluding live testimony. In this manner the hearing was "summary" and "circumscribed" but more than adequate under the standard in this circuit. See In re Calore Exp. Co., 288 F.3d at 34.

The Debtor was permitted to, and did, raise defenses that bore upon whether Wells Fargo had a colorable claim, but those defenses were simply unavailing because they were either barred by collateral estoppel principles or insufficient as a matter of law. Therefore, as discussed below, his defenses did not compel an evidentiary hearing.

### 1. The Debtor's "Standing" Defense Was Barred by Collateral Estopped

The Debtor's primary defense was that Wells Fargo did not validly hold the Note and First Mortgage. However, as Wells Fargo asserts and the bankruptcy court ruled, that issue was already litigated in the District Court.[15] The Debtor first raised the issue in the 2014 Complaint where he alleged in Count I that Wells Fargo violated its duty of good faith "by attempting to foreclos[e] . . . when it ha[d] no legal right to do so[.]" Wells Fargo, in turn, defended its status as holder of the Note in the memorandum of law supporting its Motion to Dismiss, arguing the Debtor "failed to state a plausible claim for relief that Wells Fargo [wa]s not entitled to enforce

---

[15] Although Wells Fargo argues that claim preclusion applies as well as issue preclusion, for the reasons discussed earlier, we disagree and conclude that the applicable principle here is issue preclusion.

the Note and foreclose the Mortgage." Wells Fargo further insisted in its memorandum of law that it was "the successor-by-merger to World Savings and there [we]re no credible allegations that the Note and/or Mortgage ha[d] been assigned to any third-party." Conceding in the District Court litigation that he could not prevail on his claim, the Debtor permitted Count I to be dismissed.

Thereafter, the issue of Wells Fargo's status as holder of the Note (the "Note Holder Issue") was revisited in the context of the Summary Judgment Motion regarding Counts III and V, where Wells Fargo plainly traced the relevant chain of title in its Statement of Material Facts and in the affidavit of its vice president of loan documentation. And as we have already observed, the District Court in its summary judgment ruling on Counts III and V, specifically found that Wells Fargo was in fact the holder of the Note and First Mortgage. This finding was an essential part of its judgment.

The Debtor's argument that res judicata does not apply is unpersuasive; the elements for the application of federal collateral estoppel are easily met.

### (a) The Note Holder Issue Was the Same

Wells Fargo's ownership of the Note was the central issue in Count I of the 2014 Complaint, where the Debtor alleged that neither World Savings nor Wells Fargo was entitled to foreclose. Similarly, Wells Fargo's status as holder of the Note was relevant to the Debtor's promissory estoppel claim and its Mass. Gen. Laws ch. 93A claim. The Debtor's assertion on appeal that the only issue before the District Court was whether there was a loan modification is belied by the record.

23

### (b)    The Note Holder Issue Was Actually Litigated

Although the Debtor elected not to press Count I of the 2014 Complaint and permitted the dismissal of that count, he made that tactical decision when he was represented by counsel, and after he submitted a memorandum of law in support of his objection to the Motion to Dismiss. This satisfies collateral estoppel's "actually litigated" requirement for Count I even though that count was dismissed. See Keystone Shipping Co. v. New Eng. Power Co., 109 F.3d 46, 52 (1st Cir. 1997) (recognizing an issue can be actually litigated in prior litigation even though resolution of the issue had been via a motion to dismiss and no evidentiary hearing had been held); see also Backlund v. Stanley-Snow (In re Stanley-Snow), 405 B.R. 11, 19-20 (B.A.P. 1st Cir. 2009) (explaining that "courts have ruled that the 'actual litigation' requirement of collateral estoppel may be satisfied if the party actively or substantially participated" in the prior proceedings). Further, the Debtor participated in substantial litigation activity in the District Court on the Summary Judgment Motion regarding the surviving counts in which Wells Fargo's status as holder of the Note and First Mortgage remained pivotal. After participating in discovery, the Debtor filed an opposition to that motion and a supporting memorandum of law, and then participated in a hearing on the motion. Thus, for Counts III and V, the Panel may also conclude that the "actual litigation" requirement is satisfied.

### (c)    The District Court's Judgment is Valid and Binding

The Debtor did not appeal the District Court's findings, and that court's rulings are final and binding.

### (d)    The Note Holder Issue Was Essential to the Judgment

Clearly, the issue of Wells Fargo's ownership of the Note was also an essential component of the District Court's summary judgment ruling, as reflected in its particularized

24

findings about the chain of title in the judgment, even if it was "not the ultimate issue the court decided." See Keystone Shipping Co., 109 F.3d at 52; see also Grella, 42 F.3d at 30-31 (stating issue is actually litigated as long as it is "logically" necessary to court's final decision).

It follows then that the doctrine of issue preclusion applies and the Debtor cannot seek to undo in the bankruptcy court what was already decreed by the District Court in a binding, final order. The bankruptcy court correctly determined that the District Court's findings had preclusive effect and that the Debtor was barred from challenging Wells Fargo's standing to seek stay relief to foreclose against the Property.

### 2. The Debtor's Discharge Defense

The Debtor's argument that his underlying indebtedness to Wells Fargo was discharged in the Prior Bankruptcy Case is easily dispatched. "Liens that are not avoided during bankruptcy administration 'ride through' a chapter 7 bankruptcy case and survive the debtor's discharge." In re Ledin, No. 14-12347, 2016 WL 1305060, at *4 (Bankr. D. Kan. Mar. 31, 2016) (citations omitted). "More than a century ago, the Supreme Court held that a bankruptcy discharge of a secured creditor's claim does not affect the status of the creditor's underlying lien on the debtor's property." Hamlett v. Amsouth Bank (In re Hamlett), 322 F.3d 342, 347 (4th Cir. 2003) (citing Long v. Bullard, 117 U.S. 617, 620-21 (1886)). The First Circuit also instructs that a valid pre-petition lien survives the bankruptcy discharge. Canning v. Beneficial Me., Inc. (In re Canning), 706 F.3d 64, 70 (1st Cir. 2013); Pratt v. Gen. Motors Acceptance Corp. (In re Pratt), 462 F.3d 14, 17 (1st Cir. 2006). The bankruptcy court, therefore, correctly rejected the Debtor's discharge in the Prior Bankruptcy Case as a defense to denying stay relief and appropriately authorized Wells Fargo to proceed with its state law remedies against the Property.

25

Given that the Debtor's primary defenses were either barred by preclusion principles or legally insufficient, the bankruptcy court correctly concluded that Wells Fargo had a colorable claim to the Property and did not abuse its discretion when it declined to hold an evidentiary hearing on the stay relief motion.

### B. Whether Wells Fargo was Entitled to Relief from Stay

We next consider whether the bankruptcy court abused its discretion when it granted relief from stay pursuant to § 362(d). Wells Fargo had the initial burden to demonstrate either cause under § 362(d)(1) or, under § 362(d)(2), the Debtor's lack of equity in the Property. But the Debtor had the burden of proof on all other issues, including whether the Property was necessary to an effective reorganization. In re Lopez, 446 B.R. at 20.

At the November 19, 2019 hearing, Wells Fargo represented that the Debtor had not made any post-petition payments on the First Mortgage, resulting in $18,420.72 due post-petition. Wells Fargo further contended that there was no equity in the Property because the outstanding loan was $581,000.00, and the Debtor listed the fair market value of the Property on his schedules as $580,000.00. Accordingly, Wells Fargo argued relief was warranted both under § 362(d)(1) and (d)(2). During the hearing and in his submissions filed in opposition to the Stay Relief Motion, the Debtor did not challenge these assertions. On appeal, the Debtor's brief is silent as to Wells Fargo's assertions that there was no equity in the Property; nor does he suggest the Property is necessary for an effective reorganization. Therefore, the Panel concludes that the bankruptcy court did not abuse its discretion when it granted the Stay Relief Motion.

The Debtor's effort to defeat Wells Fargo's status as a creditor—let alone as a secured creditor—did not end with his objection to the Stay Relief Motion. It was redoubled in his objection to the proofs of claim. Our analysis advances to the Proofs of Claim Orders.

## III.    The Legal Framework Governing the Filing and Allowance of Claims

### A.    Generally

"Sections 501 and 502 govern the filing and allowance of creditor claims in bankruptcy proceedings." Am. Exp. Bank, FSB v. Askenaizer (In re Plourde), 418 B.R. 495, 502 (B.A.P. 1st Cir. 2009) (citing Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443 (2007)). "When a debtor files for relief, each creditor is entitled to file a proof of claim against the debtor's estate pursuant to § 501." Id. "Once a creditor has filed such a proof, the bankruptcy court must determine whether the claim is 'allowed.'" Id. Section 502 "provides that a proof of claim . . . is allowed in the absence of objection, and [Bankruptcy Rule] 3001(f) states that a properly executed proof of claim 'shall constitute prima facie evidence of the validity and amount of the claim.'" Tracey v. United States (In re Tracey), 394 B.R. 635, 638-39 (B.A.P. 1st Cir. 2008). "This evidentiary presumption remains in force even though an objection to the claim is filed by a party in interest." Fullmer v. United States (In re Fullmer), 962 F.2d 1463, 1466 (10th Cir. 1992).

### B.    Burden of Proof

An objection does not overcome the presumption of prima facie validity of a filed claim unless supported by "substantial evidence." Juniper Dev. Grp. v. Kahn (In re Hemingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir. 1993). The debtor has the "initial burden of producing substantial evidence" in opposing a claim. In re Hayes, 240 B.R. 457, 462 (Bankr. D. Mass. 1999). The degree of "substantial evidence" required to rebut the prima facie showing of a properly filed proof of claim is not defined under the Bankruptcy Code or the Bankruptcy Rules. In re Williams, No. 92-50546, 1994 WL 329328, at *2 (Bankr. S.D. Ga. Mar. 30, 1994).

27

Some courts have determined that the objecting party "must produce evidence equal in force to the *prima facie* case." In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992); see also In re Fullmer, 962 F.2d at 1466 ("To overcome this prima facie effect, the objecting party must bring forward evidence equal in probative force to that underlying the proof of claim."). "Mere allegations, unsupported by evidence, are insufficient to rebut the [claimant's] prima facie case." Toma Steel Supply, Inc. v. TransAmerican Natural Gas Corp. (In re TransAmerican Natural Gas Corp.), 978 F.2d 1409, 1416 (5th Cir. 1992).

The grounds for disallowing a claim are set forth in § 502(b)(1)-(9). See 11 U.S.C. § 502(b)(1)-(9); see also Walston v. PYOD, LLC (In re Walston), 606 F. App'x 543, 547 (11th Cir. 2015). Here, the Debtor did not specify the statutory basis for his objection. However, we construe the substance of the Debtor's objection as falling under § 502(b)(1). That section states that the court may disallow a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ." 11 U.S.C. § 502(b)(1).

## IV.     Applying the Legal Principles to the Proofs of Claim Orders

By its POC 5-1 and POC 7-1, Wells Fargo asserted it was the holder of the First Mortgage and Second Mortgage, respectively. The Debtor's objections to the proofs of claim mirrored his objections to the Stay Relief Motion. As discussed amply above, applying the principles of collateral estoppel based on the District Court's findings, the bankruptcy court properly rejected the Debtor's argument challenging Wells Fargo's status as the holder of the Note. Also, as discussed earlier, the bankruptcy court was equally justified in rejecting the Debtor's argument that the indebtedness had been discharged in the Prior Bankruptcy Case.

Simply stated, the Debtor did not satisfy his burden of negating the prima facie validity of Wells Fargo's claims with substantial evidence. And, by allowing Wells Fargo's liens only as "protective secured claims with respect to the mortgage[s] and not as . . . general unsecured claims against the estate," the bankruptcy court properly accounted for the effect of the Debtor's discharge, essentially granting leave for Wells Fargo to proceed only in rem against the Property. We discern no abuse of discretion in the bankruptcy court's entry of the Proofs of Claim Orders.

The Debtor's argument that he was entitled to an evidentiary hearing does not change the outcome of our analysis. Undeniably, "[t]he filing of an objection to a proof of claim 'creates a dispute which is a contested matter' within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief." Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell), 223 F.3d 1035, 1039 (9th Cir. 2000) (quoting Fed. R. Bankr. P. 9014 advisory committee notes). This does not necessarily mean that the Debtor was entitled to an evidentiary hearing. Unlike adversary proceedings which are governed by Part VII of the Bankruptcy Rules, "contested matters are subject to the less elaborate procedures specified in Bankruptcy Rule 9014." In re TransAmerican Natural Gas Corp., 978 F.2d at 1416 (citation omitted) (internal quotation marks omitted). Nothing in the plain language of Bankruptcy Rule 9014 suggests that the hearing on an objection to claim must be an evidentiary hearing. Moreover, the Debtor's argument overlooks that the "concept of notice and a hearing is a flexible one." Gonzalez-Ruiz v. Doral Fin. Corp. (In re Gonzalez-Ruiz), 341 B.R. 371, 381 (B.A.P. 1st Cir. 2006) (citation omitted). Indeed, § 102(1)(A) defines the phrase, "after notice and a hearing" to be "such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." Id. (citing 11 U.S.C. § 102(1)(A)).

29

In light of the foregoing, particularly the Debtor's inability to produce or identify evidence which cast doubt on the prima facie validity of POC 5-1 or POC 7-1, the bankruptcy court did not abuse its "considerable" discretion when it declined to conduct an evidentiary hearing.  See Finney v. Smith, 141 B.R. 94, 101 (E.D. Va. 1992), aff'd, 992 F.2d 43 (4th Cir. 1993).

## **CONCLUSION**

For the foregoing reasons, we **AFFIRM** the Orders.